Case number 17-7082, Leidos, Inc., formerly known as Science Applications International Corporations v. Hellenic Republic Mr. Goldfarb for the appellate, Mr. O'Brien for the appellate Good morning, Your Honor, and may it please the Court, Neil Goldfarb for the Hellenic Republic, and I'd like to reserve four minutes for rebuttal. Can you raise that a little bit? Thank you. Neil Goldfarb again for the appellate and reserving four minutes for rebuttal. May it please the Court. I'd like to begin today by discussing the supplemental authority that we filed just a few days ago because I think it's important to, well, first of all, just to discuss it, since we didn't have the space in our letter to discuss the implications of it, but also because it's important to the central issues of the case, which essentially are was there manifestly unjust to give Leidos the precise relief that it had asked for, and on the issue of the D.C. law, whether that applies, whether the D.C. law is in conflict with federal arbitration policy, and the restatement provision recited relates to both of those issues. The background of it, which is important to understand, is that the district court and Leidos relied on this Court's decision in continental transfer, which in turn relied on section 823 of the third restatement of foreign relations for the discretionary rule about the currency of judgment. That provision of the restatement was promulgated about two years before the Uniform Law Commissioners issued the Uniform Foreign Money Claims Act. So it obviously did not take account of the fact that there was this Uniform Act out there, which subsequently was enacted by D.C. and a number of other states. Now, finally, section 420 of the fourth restatement addresses that Act and essentially, to a large extent, I think conforms what the restatement says to what the Act would require. And I would point out that section 420 deals specifically with recognition and enforcement in the U.S. of foreign court judgments. But those are a subset of what is covered by section 823, which is obligations payable or denominated in foreign currency. Not all foreign court judgments necessarily are entered in foreign currency, but the issue before us now is a foreign court judgment that is entered in foreign currency, which is a subset of 823. So what they have done for at least that subset is to conform it to the Uniform Act. As it says, because it says the court may enter judgment either in dollars or foreign currency, except as provided by state law. So in the comments in the reporter's notes, I think it says that state law governs the issue of the currency. The reporter's notes for the restatement? Is that what you're talking about? Yes. The fourth restatement? Yes. Is that really a restatement? Well, I think, Your Honor, that's a valid point. The ALI, love the ALI, but it's a few law professors. But the point is we're not the one relying on the restatement. LIDOS is relying on the third restatement. And at a minimum, what this does is it says the restatement, and I think perhaps the point you're making, Your Honor, is the restatement is not restating, it's stating for the first time and changing, et cetera. If that's the case, then it's hard for them to come in and say this was such a terrible result when the very body that they rely on ultimately for their rule has now said, in light of the subsequent legislation, that, well, this new rule, you know, they've changed the rule. So at a minimum, that diminishes the authority of the restatement as something to rely on and as stating basically the minimum requirements for avoiding manifest injustice. Because, you know, that's what their claim, their motion in the district court relied on, not on the fact that their claim there was a clear error. They said it was manifestly unjust to enter a judgment denominated in euros despite the fact that that's precisely what they'd asked for at the beginning of the case, precisely what they asked for twice during the case as it was going on even after the euro had declined, despite the fact that that was precisely what they contracted for was to be paid in euros. Well, I was just going to ask you that about the contract. You don't make much of the contract in your brief, but it does say payment in euros, right? I'm sorry? It says payment in euros? It says payment in euros. Yes. What role does that play in our decision here? Well, I think... I mean, the briefs are all about Supreme Court cases and the restatement and choice of law. But what about the contract? Well, no, I think it's very significant. Was it controlling? Well, I think it... I wouldn't have a problem saying that that's controlling because, you know... But you don't argue that in your brief. No, we don't say it's the controlling factor, but certainly it very strongly supports it. It's one of the many factors that shows why this was not manifestly unjust. Well, actually, let me take it back. Under the statement that it's not controlling, because under the D.C. Act, if the contract provides for a particular currency as the currency of payment, that becomes the currency of the claim, and that governs what the judgment should be... So if the contract had provided for payment in dollars, it would be superseded by D.C. law? If it provided for payment in dollars under D.C. law, the judgment should be $100. So the contract is not really relevant? I'm sorry? The contract is not especially relevant? The contract is not especially... Let me... I'm sorry. The contract's not especially relevant. This is just a question of D.C. law, one way or the other. That's your... In the sense that it determines the currency of the claim. So, you know, if the contract... Part of the contract was... There was the... I think actually the award was denominated in dollars. Right. But the contract provided for payment in euros, and the award provided for payment in euros, so under D.C. law. And they haven't denied that. They haven't disputed the fact that if D.C. law applies, the judgment should be denominated in euros. Why should D.C. law apply? So I take your point that they get what they asked for. Let's put that... park that for a minute and suppose they had asked for it in dollars. Shouldn't there be a uniform federal rule in a situation like this? Your Honor, no. I think the presumption... And they have not disputed that this is the presumption. The presumption isn't... Even when federal common law applies, there's a presumption in favor of borrowing from state law, and only to use a federally governed, you know, federally determined rule if it's necessary to protect federal interests, to avoid conflict with federal interests, that kind of thing. But this is arising in an area with international implications where usually you would think about a uniform federal rule. Well, not necessarily, Your Honor. Certainly customary international law does not... which is this does not involve even customary international law, but that's not an area that's been federalized. If you're going to talk about where there's an interest in uniformity, there's a stronger claim for that when you're talking about enforcement of foreign court judgments, which is undisputed, and this court is recognized or governed by state law. There's a much stronger argument for uniformity that foreign litigants who get a judgment in France or Germany or wherever shouldn't have to deal with 50... potentially 50 different regimens for enforcing a judgment. That seems to be a much stronger argument for uniformity than would apply here. And there is, in effect, under the approach we're taking here, the uniform federal rule, which is you follow the state statute on this issue, that the currency, as a general matter, the currency that a judgment is entered into is not a federal law issue. It hasn't been regarded as that. Well, it certainly is not currently being regarded as that. It was under their prior regimen that preceded the restatement. The whole case is a federal law case. You're right. That's right. Because it's in arbitration and also... Well, it's federal law because arbitration. It's also under the FSIA, but the FSIA incorporates state law because it says that the foreign sovereigns are liable on the same terms that private litigants are. So the question is whether it impairs federal arbitration policy to apply state law, and it doesn't. The New York Convention itself, the only thing it says about local law, if it says local law should be provided, you know, governs the procedures to be followed in enforcing international arbitration awards. And the only limitation on that is that they can't discriminate against international arbitration awards. They can't subject them to any less favorable procedures than would apply to domestic arbitration awards. And the Uniforms Act doesn't do that. It applies precisely the same standards to international awards as apply to domestic arbitration awards and as apply to normal litigation. So there is no discrimination against international arbitration. And also the idea that there's a requirement for uniformity on currency really makes no sense given that we're talking about an arbitration regime that is applicable in almost the entire world, and every country is going to have its own rules for what currency would be applied. So if they had gone to France to enforce this arbitration award, of course France would also use it as the euro. They would enter judgment in euros. If they went to the U.K., which even though it uses the pound and not the euro, the U.K. would apply the currency of the arbitration award under current U.K. law. So the fact that there's a lack of uniformity among the various states in the United States I think doesn't make a whole lot of difference given the lack of uniformity among all the countries of the world. All right, your time is up. We'll give you a couple of minutes of your time. Thank you. Mr. O'Brien. Good morning, Your Honors, and may it please the Court. William O'Brien on behalf of Leidos. Judge Kavanaugh, it is a federal law case, and there are unique federal interests to be protected here, and there's a robust federal common law to protect those interests. What's the federal interest? The federal interest would be to make a creditor, a judgment creditor in an international arbitration case whole to make sure that they're whole, number one. Number two, Judge Kavanaugh. Why is that a federal interest? I mean, I understand the interest, but why is it a federal interest? It's not like any interest the Court has described as federal. It doesn't involve international law. It doesn't involve liability, right? Well, it does involve international law, Judge Kavanaugh, in the sense that this is the – Well, it's an international case, but it's basically a contract dispute, right? It is a contract dispute. Between two parties. It is, Your Honor. It involves – but when you get to the stage of international arbitration award enforcement, we're talking about U.S. treaty obligations as well because the New York Convention is a treaty. Greece, the Hellenic Republic, is a signatory to it. It has been since 1962, the United States since 1970. Is there any particular part of the New York Convention that would be violated by an award in euros in this case? It would be – not just per se that it's in euros, Judge Taylor. What would be – Well, you know what I mean. That it's – yeah. That it's governed by D.C. law. That's my question. Sure. Well, the D.C. law, the reason why the uniform, the UFMCA, would not be a good fit here or be a terrible fit is because how restrictive it is. The way the federal common law has developed to help the U.S. meet its treaty obligations for facilitating enforcement of arbitral awards and for efficient, effective enforcement of that, making creditors whole, and making sure that the debtor isn't rewarded for, like in this case, delaying for four years the payment of an award that was due. The reason that has all developed is because – That's not true, though. That's not true that Greece delayed. I mean, there were proceedings going on in Greece that they had every right to pursue. And I want to ask you about the ill fit of this under Rule 59E. There's no new – there's no new legal theory. There's no new evidence, as I see it, except for the fact that the exchange rate has changed. And under our decision in Patten-Boggs, that was known to you before judgment. It may have changed after judgment. But something that was available to you before judgment you can't raise on 59E. A legal theory, that is, we want to convert the currency, you can't raise on 59E. So I don't see how this even fits 59E. Well, the way it fits 59E, Your Honor, is the discretion that's provided to a court to make sure that, for instance, a continental transfer, a GE transport, in McKesson, in Belize, all those cases. Continental transfer has – is clearly distinguishable. They asked – first of all, they asked at summary judgment that it be converted. As I remember, it was specified in the agreement, the currency. So there's – I don't see continental as really hindering or applying to this. Well, continental transfer, Your Honor, had the same scenario in the sense that there were – Judge Kessler, in this case, found specifically in her order at JA 570. She found that there were roadblocks to enforcement errors. So I respectfully disagree, Your Honor, that there wasn't dilatory tactics here to delay. What the convention requires is the New York Convention and what the case law says. So are you saying that the – what, that the Greek court proceedings were some sort of artifice or what? Yes. Yes, Your Honor, that it wasn't a meritorious appeal. It wasn't a proper use of it. In any event, putting that aside entirely, Judge Henderson, even if it was meritorious, the delay – the risk of the delay in the currency changes falls on the judgment debtor, not on the creditor. If you're a judgment creditor, you have a right to be paid at the time of the award. And continental transfer says that. Yes, Your Honor. I didn't mean to interrupt. Picking up on Judge Henderson's questions, how is it manifestly unjust to give someone what they request? Because we're not getting what we requested. What we requested, Your Honor, under the New York Convention, was prompt enforcement at the time of the award, July 2013. Between July 2013 and January of 2017, there's a 19% drop in the value of the award. It turns out to be $12 million less, right? So the Atlantic Republic – It's foreseeable that there will be a change in the currency exchange rate. Potentially it could go. And yet it's asked for in Euros. And the question is, Judge Kavanaugh, who bears that risk of the currency change? What we're asking is not for a windfall. What we're asking is to get what we bargained for in July 2013. And the convention again – When you put something in the request that would alert the court to that issue or alert the other side to that issue – Two points on that, Your Honor, Judge Kavanaugh. So in our proposed order four years ago, we put in just and proper relief. And that's entirely within the discretion of the trial court. And by the way, the trial court – the district court lived this case for four years. When Judge Kessler says that there have been roadblocks and that this is a long-running litigation in the same vein as Continental Fence, that's her discretion. But wasn't it, looking back on what was fought in 2013, you now think that's wrong, that you shouldn't have asked for it in Euros? That's not what we think, Your Honor. We think we should have been paid, as the convention requires promptly, that there shouldn't be attempts to avoid the award. What the thrust of the federal common law is that you must protect a creditor, you must avoid dilatory tactics or avoid any sort of attempt to protract litigation. That's the thrust of the common law, Continental Transfer, and GE, and Belize, and McKesson. But isn't your position now, your general legal position, that there should be a federal rule in preferring dollars? No. No, Your Honor. The position now is not that there should be, but that there is. The robust federal common law provides a roadmap for this right now. And it should be in dollars. It's not a question of exactly what the currency should be. The question is preserving the discretion for the trial court to make sure that you maintain your obligations under the New York Convention. I'm not understanding that. Okay. So what's specific? What's the trial court supposed to do in terms of picking, say, Euros or dollars in a future case? To make sure that the creditor, the judgment creditor, gets what they bargained for. So, for instance, Your Honor, if we had been paid when we should have been paid, which is in July of 2013, when the award comes out, we wouldn't be here, right? Because that would be the value that we bargained for. So the Hellenic Republic decides that it's not going to pay the award. It hasn't paid to this day. They're not paying the award. We have a sharp drop. So what courts have done is to develop the breach day rule in that instance. And what the breach day rule is, which is articulated in Continental Transfer, is to protect what was bargained for by the judgment creditor, right? What's the value of the award? We're not trying for a windfall here. We're trying to get back to even. Whether there's a foreseeable risk there or whether it can be diminished, who bears that risk? Not the judgment creditor. Who bears that risk is the judgment creditor. To Judge Tatel's point earlier about does the contract matter here, what you're asked for in the contract, how you perform in the contract? No. This is an arbitral enforcement award case under the Federal Arbitration Act and the New York Convention. It's a U.S. law proceeding. What about the restatement? The restatement, Your Honor, has been throughout the cases, Continental Transfer, GE, McKesson, Belize, has been thoroughly developed into a robust federal common law aspect now. As far as the filing that the Postal Council made on Sunday evening, the 28-J filing, there are two points about that. One is what the reporter's notes say. What about what the restatement says? Yes, what the restatement says is in 823. The restatement says it should be denominated either in foreign currency or in U.S. dollars unless state law requires otherwise. That's the restatement itself. Right, and if we apply state law in this case, what it does is it strips the discretion of the district court. How? Because the state law that is being urged to apply here requires that the currency be stated in exactly the amount of the claim. That entirely takes away the ability, as in this case, like of Judge Kessler, to then come in and say, well, that's not fair. Why is that not fair? Because there's been a four-year delay. That four-year delay should not have to suffer a $12 million drop in that four-year delay of payment. That answer assumes the fourth restatement applies, right? Well, that's true, too, Your Honor. And I think Judge Taylor's question, at least as I understood it, is should the fourth restatement apply? Well, I think not at this point, Your Honor, for a couple reasons. One is it's wrong on its face, and the reporter's note, it says there's a gap in federal common law. Just a bunch of law professors here. There's no gap in the federal common law. There's a robust federal common law. And then, secondly, really, 823 remains untouched anyhow in this reporter's note. But we don't think it should apply. We think we have the roadmap very clearly laid out in the existing case law, the federal common law for the unique federal interest, providing for discretion of the trial court to do so. So for that reason, we ask the Court to affirm the trial court's decision. All right. Thank you. If there are no other questions. Does Mr. Goldberg have any time? Okay. Why don't you take two minutes? Thank you. If the Court reaches the federal common law issue, which, of course, it doesn't have to do if it rules. It's totally a failure to satisfy Rule 59. But I think an appropriate federal common law rule to apply here, if the Court was going to apply a federal common law, would be that when the party asks for judgment in foreign currency and the contract provides for judgment in a foreign currency and the award is in a foreign currency, there should be prima facie the assumption that the judgment should be issued in a foreign currency. That's not taking into account the delay, right? Well, they've got prejudgment interest, Your Honor. That deals with delay. It doesn't deal with exchange delay. But that gets to the question of whether… Who bears the risk of the exchange? Well, that's one of the questions. That's one of the issues. And, of course, they're the only one who were in a position to do that because they were the ones who asked for judgment in euros. But another piece of it, Your Honor, is whether… What's the economic reality? If this case had been flipped around and the Hellenic Republic had gotten an award against Laidos entered in euros and came here and did everything that Laidos did and then turned around and said, well, the dollar value of the judgment is declining, that shouldn't be listened to because the government of Greece is based on the euro. That's their currency. So the economic reality is that the decline of the dollar doesn't make a difference. I mean, for us, if you get a judgment between American litigants, if the value of the dollar declines against the euro or gains against the euro, that doesn't matter. That doesn't affect the economic reality. And it seems that most Laidos should have had, you know, if they think that the economic reality of this transaction would be felt in dollars rather than euros, they had an opportunity to try to make that showing before the district court, before judgment. And, you know, they didn't even do that after judgment, either in the district court or in proff or anything in this court. They have, you know, if you just assume that you take them at their word, that they're the best ones to evaluate what the economic reality is when they asked for euros, then and assume that's the case unless they come in and prove with evidence that it's not the case, then I think you ought to stick with what was issued. But that also allows for the discretion that my friend has talked about in the sense that it allows the litigant who's got the, who wants entry of judgment in dollars to come in and provide an evidentiary factual basis for asking for that rather than just flatly assuming that it should be in dollars as the presumption. So if the court's going to decide this on the basis of federal common law, that really would just be tweaking a little bit what the third restatement says. But any court also. All right. You need to wind it up. You're over your time. I'm sorry. I think the new restatement calls into question the continuing validity of the older statement. They've yet to reach that other provision yet. So what the future holds, we don't know. Thank you.
judges: Henderson, Tatel, Kavanaugh